**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 24-cr-039-APM** |
| | : | |
| **BRANDON TYRIQ WHITE** | : | |
| | : | |
| **Defendant.** | : | |

**RESPONSE TO THE GOVERNMENT'S OMNIBUS MOTION IN LIMINE**

Defendant Brandon White ("Mr. White"), by and through his counsel, Michael E. Lawlor, Adam C. Demetriou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits the following response to the Government's Omnibus Motion in Limine (ECF No. 21).

## I. Procedural History

On January 23, 2024, the Government filed an Indictment in this Court charging Mr. White with the following offenses: kidnapping (Count One); first-degree sexual abuse while armed (Counts Two and Four); aggravated assault white armed (Count Six); possession of a firearm during a crime of violence or dangerous offense (Counts Three, Five, and Seven); strangulation (Count Eight); and carrying a pistol without a license (outside home or place of business) (Count Nine). (Indictment, ECF No. 1.) The charges at issue in this case relate to events that are

alleged to have occurred between the evening hours of December 18, 2023 and the early morning hours of December 19, 2023. The Government alleges that on December 18, 2023, Mr. White met with MB, with whom he had previously been involved in a romantic relationship, at a Ruby Tuesday restaurant in Clinton, Maryland. The Government further alleges that Mr. White kidnapped MB from the restaurant, drove her to an address in Washington, D.C., and sexually assaulted her. MB reported the alleged kidnapping and assault in the early morning hours of December 19, 2023. Mr. White was initially charged in the District Court of Maryland for Prince George's County. Those charges were dismissed in favor of federal prosecution in this District. A jury trial in this case is scheduled to begin on January 13, 2025.

In its Omnibus Motion in Limine, the Government presents ten requests. The Government has also provided several sealed exhibits to accompany its Omnibus Motion. Some of the Government's requests are premature. Others appear to be directed at confirming that defense counsel are aware of the Federal Rules of Evidence. Mr. White will respond briefly to each aspect of the Government's Omnibus Motion.

## II. MB's Statements to First Responders

The Government seeks to admit certain of MB's out of court statements to first responders as excited utterances under Rule 803(2). The Government has

supplied three body-worn camera clips containing the statements at issue. *See* Gov. Exs. 1-3. As an initial matter, these clips contain statements from individuals other than MB. For example, Gov. Ex. 1 contains some of witness JS's statements to a PGPD officer. JS's statements are not admissible as MB's excited utterances. The Government should therefore redact those statements from any proposed trial exhibit.[1] Gov. Ex. 2 also contains JS's statements to the officer. In the clip, MB is speaking to other first responders in the background, but most of her comments are not discernable. Again, JS's out of court statements are not admissible as MB's excited utterances. Gov. Ex. 3 is the longest of the three clips at issue for this portion of the Government's Motion. In this clip, MB is no longer standing in the 7-Eleven parking lot. She is seated in an ambulance.[2] Several portions of the clip contain statements that are not admissible. It does not appear that the Government has provided a transcript of the 8 minute and 25 second clip. Mr. White will therefore refer to timestamps in the video.

At 00:15, MB describes the alleged kidnapping from the Ruby Tuesday restaurant. She states that "people saw" Mr. White throw her in the back of his car. The Government has not identified a single witness who claims to have seen this conduct. MB's statement as to what others saw should not be admitted. At

---

[1] Mr. White is not clear as to whether the Government seeks to introduce the video clip as an exhibit or ask MB and/or the officer what MB said at the relevant time.
[2] The ambulance was not in motion.

approximately 1:00, MB recounts the statements of a 7-Eleven attendant. These statements contain another layer of hearsay and should not be admitted. At 1:45, MB states that a woman at the 7-Eleven saw Mr. White trying to push her into the car. MB's statement concerning another witness' alleged observation should not be admitted. By 3:12, an EMT is depicted attending to MB's teeth. By 4:20, MB's demeanor has noticeably changed. Her voice is no longer trembling. She describes in a matter of fact manner the nature of her relationship with Mr. White. She further describes – in a calm manner – the alleged kidnapping. MB responds directly to each of the officer's confirmatory questions. By 6:25, MB becomes emotional when discussing the alleged incident at 7-Eleven and appears to remain in that state through the end of the clip. Accordingly, the portion of the clip from approximately 4:20 to 6:25 should not be admissible as an excited utterance.

## III. The 911 Call

Mr. White does not object on hearsay grounds to the admission of the 911 call which lasts approximately 5 minutes and 30 seconds. However, the audio clip supplied as Gov. Ex. 4 contains additional material beyond the 911 call. The Government has not made any argument for the admissibility of any portion of the recording beyond the 911 call. The Government should therefore redact the remainder of the recording.

## IV. MB's Statements to Medical Providers

EMS personnel: As noted above, the 54-second clip contained in Gov. Ex. 2 consists mostly of another witness' statements to a police officer, which do not constitute MB's statements for the purpose of medical diagnosis or treatment. While portions of Gov. Ex. 3 may constitute statements made for and pertinent to medical treatment (such as portions where MB describes missing a tooth or having been struck), the vast majority of MB's statements in the clip consists of a narrative of events in response of the questions of a police officer, not an EMS worker. The Government has not offered any specific argument that narrative statements offered to a police officer that happen to be made in the presence of an EMS worker or physician fall within the hearsay exception of Rule 803(4). The Government also seeks to admit MB's out of court statements to EMS personnel as reflected on a Prince George's County Fire Department report. Gov. Ex. 5. In its Motion, the Government states that it has highlighted the portions of the report it seeks to admit under Rule 803(4). The copy of the report that Mr. White received with the Government's exhibits is does not contain a highlighted portion. The only statement of MB contained on page 3 of the report is the following: "She stated earlier she was chased by her boyfriend, struck with his fist and pushed into a wooden fence outside a 711." Gov. Ex. 5 at 3. To the extent MB's statements in Gov. Ex. 3 are admitted, this statement appears to be cumulative. The remainder of the narrative on page 3 of

Gov. Ex. 5 contains the statements of the EMS crew member, not MB. Those statements are not admissible under Rule 803(4). *See, e.g.*, *United States v. Brown*, No. 22-170 (CKK), 2024 U.S. Dist. LEXIS 194183, at *8-9 (D.D.C. Oct. 25, 2024) ("The Rule 803(4) exception applies to statements made by *patients*, on the premise that patients seeking diagnosis or treatment have a strong motivation to be truthful. Statements made by a medical professional who provides that diagnosis or treatment, including those of the author of the report at issue here, do not fall within the exception because the declarant lacks the same strong motivation for truthfulness that justifies the Rule unless the declarant's statements are made in part to inform further diagnosis or treatment.") (internal citations and quotations omitted). Here, the EMS crew member's written statements were not made to inform further diagnosis or treatment because, as set forth in the report, MB refused further diagnosis and treatment.

Southern Maryland Hospital. As noted above, MB refused further medical treatment at the 7-Eleven. MB then accompanied a PGPD officer to a PGPD station. There, MB spoke with PGPD Sergeant Clark and MPD Detective Gamble. The interviews concluded around 4:20 a.m. Several hours later, MB and her father reported to MedStar Southern Maryland Hospital Center. There, MB received some medical treatment and was then referred to another hospital in DC for a SANE examination. Mr. White will not object on hearsay grounds to the admission of MB's

statements contained in Gov. Ex. 6A, which consists of one page from MB's Southern Maryland medical records. Similarly, Mr. White will not object on hearsay grounds to the admission of MB's statements as reflected in the highlighted portions of Gov. Ex. 6B. However, the highlighted portions of the Southern Maryland records contain statements by people *other than* MB. Those statements are not admissible.

SANE Examiner. Mr. White will not object on hearsay grounds to the admission of MB's statements as reflected in the highlighted portion of page 30 of Gov. Ex. 7. However, Mr. White objects to the admission of MB's statements reflected in the highlighted portion of page 4. These statements clearly constitute a narrative of the alleged offenses as opposed to any statement made for medical diagnosis or treatment. Consistent with Rule 803(4), MB's statements regarding her symptoms may be admissible but other non-medical statements are not.

## V. MB's Statements to Law Enforcement

The Government's motion is premature. Mr. White has not yet cross-examined MB.

## VI. Business Records

The Government has listed 16 categories of purported business records that it will seek to admit without a sponsoring witness. The Government has not made any specific argument as to each category under Rule 803(6). Nor has the Government made any relevance arguments. Furthermore, the Government has not identified the

portions of these records that it will seek to admit. Accordingly, Mr. White is unable to respond to this portion of the Government's motion. Mr. White notes that the Government did not include among its exhibits certifications for certain categories of the subject documents. As the Court knows, the discovery in this case is voluminous. The Government has provided additional discovery as recently as December 14. Therefore, Mr. White requests that the Government produce in one folder all of the relevant business records certifications/certifications of authenticity as well as the specific portions of each group of records the Government seeks to admit. Mr. White will then review and note any preliminary objections.

## VII. MB's Sexual Behavior

Counsel are aware of Rule 412 and intend to comply with it. Counsel are also aware of the constitutional rights to confrontation, due process, and a fair trial.

## VIII. References to Potential Punishment or Mr. White's Personal Circumstances

Mr. White is not able to discern what the Government means by "the defendant's personal circumstances." (ECF No. 21 at 19.) Mr. White is on trial. The evidence in the case will by necessity relate to his personal circumstances – otherwise it would be irrelevant. Furthermore, counsel do not intend to argue their opinion of Mr. White. With respect to the Government's request to preclude evidence of counsel's relationship with Mr. White, counsel are at a loss to understand

the argument. The jury will know that counsel represent Mr. White. Under this Court's standard voir dire (ECF No. 9-1), all prospective jurors will be informed of this fact. There is no relationship between counsel and Mr. White apart from the professional attorney-client relationship as guaranteed and protected by the Sixth Amendment. Lastly, Mr. White agrees that "references to possible punishment, including incarceration," are improper. (ECF No. 21 at 20.) The Government should therefore be precluded from introducing any evidence that Mr. White has been incarcerated, including jail calls.

## IX. Impeachment by Other Witness' Reports

Counsel are familiar with the Federal Rules of Evidence.

## X. Exculpatory Hearsay

Counsel are familiar with the Federal Rules of Evidence.[3]

## XI. Case Agent

Counsel are familiar with Rule 615. Mr. White intends to invoke the rule on witnesses. Mr. White has no objection to the Government's designation of Agent Hills as its "one officer or employee." Fed. R. Evid. 615(a)(2). Mr. White requests pursuant to Rule 615(b) that the Court "prohibit disclosure of trial testimony to

---

[3] This portion of the Government's motion refers to the alleged obstruction calls, which the Government has withdrawn.

witnesses who are excluded from the courtroom" and "prohibit excluded witnesses from accessing trial testimony."

## CONCLUSION

The foregoing constitutes Mr. White's position as to each of the requests in the Government's Omnibus Motion in Limine.

Respectfully submitted,

___________/s/________________
Michael E. Lawlor
Adam C. Demetriou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of December, 2024, the foregoing was served on all parties via ECF.

_____/s/_________
Michael E. Lawlor